IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO


Civil Action No. 1:07-cv-01378-RPM-BNB

R.W. BECK, INC.,
a Washington corporation,

       Plaintiff,

v.

E3 CONSULTING, LLC,
a Colorado limited liability company,

       Defendant.

---

**E3 CONSULTING, LLC'S MOTION TO DISMISS ALL CLAIMS OF R.W. BECK'S COMPLAINT, WITH INCORPORATED MEMORANDUM OF LAW**

---

DATED:  August 22, 2007

Benjamin B. Lieb
Scott R. Bialecki
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, Colorado  80202 5141
Telephone:     303-863-9700
Facsimile:      303-863-0223
E mail:   blieb@sheridanross.com
           sbialecki@sheridanross.com
           litigation@sheridanross.com

ATTORNEYS FOR DEFENDANT
E3 CONSULTING, LLC

# TABLE OF CONTENTS

**Page**

I.   **RELEVANT BACKGROUND** ...........................................................................2

    A.   **E3's And R.W. Beck's Consulting Services** ..................................2

    B.   **E3's Allegedly Infringing Windsor Report**................................3

    C.   **R.W. Beck's Allegations** ...................................................................4

    D.   **The Genesis Of R.W. Beck's Reports**...........................................4

        1.   **The Sacramento Report** ....................................................5

        2.   **The Orange Report** .............................................................6

II.  **LEGAL ARGUMENT**..................................................................................7

    A.   **R.W. Beck's Copyright Infringement Claim Is Meritless**................7

        1.   **R.W. Beck's Copyright Infringement Claim Is Based Upon A Misapplication Of The Law** .......................................8

            a.   **Material from the Black & Veatch Report is unoriginal and must be filtered from the Orange Report**.....................................................................9

            b.   **A comparison of remaining expression confirms no substantial similarity between the Windsor and Orange Reports and no copyright infringement**......................9

    B.   **R.W. Beck's Unfair Competition And Unjust Enrichment Claims Are Pre-Empted By Federal Copyright Law** ..............10

    C.   **R.W. Beck's C.C.P.A. Claim Is Meritless** .................................11

        1.   **R.W. Beck's C.C.P.A. Claim Is Insufficiently Pled**...............12

        2.   **R.W. Beck Cannot Prove A Significant Public Impact** ........12

     **a.**  **No consumers were directly affected by the Windsor Report** ..................................................................13

     **b.**  **The recipients of the Windsor Report are highly sophisticated** ..........................................................14

     **c.**  **There is no evidence of prior or future impact on other consumers** ....................................................14

**III.**  **<u>CONCLUSION</u>** ...............................................................................................15

## TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*Anderson v. State Farm Mutual Automobile Insurance Co.*, No. 02-382, 2004 U.S. Dist. LEXIS 27305 (D. Colo. June 28, 2004)............................................................12

*Churchill Livingstone, Inc. v. Williams & Wilkins*, 949 F. Supp. 1045 (S.D.N.Y. 1996) .........8, 10

*Conley v. Gibson*, 355 U.S. 41 (1957) ...............................................................7, 10, 15

*Continental X-Ray Corp. v. Home Indemnity Co.*, No. 96-5250, 1997 U.S. Dist. LEXIS 2558 (N.D. Ill. Mar. 4, 1997) ............................................................7

*Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280 (10th Cir 1996).......................8

*Davis v. The Gap, Inc.*, 246 F.3d 152 (2d Cir. 2001) ...................................................10

*Durham Industrial, Inc. v. Tomy Corp.*, 630 F.2d 905 (2d Cir. 1980) ...........................8

*Ehat v. Tanner*, 780 F.2d 876 (10th Cir. 1985) ........................................................7, 11

*Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991) ....................................................7, 12

*Hall v. Walter*, 969 P.2d 224 (Colo. 1998) ...............................................................12

*Hutchins v. Zoll Med. Corp.*, No. 06-1539, 2007 U.S. App. LEXIS 15809 (Fed. Cir. July 3, 2007) ............................................................9

*Maher v. Durango Metals, Inc.*, 144 F.3d 1302 (10th Cir. 1998) .................................7

*Morrissey v. Proctor & Gamble Co.*, 379 F.2d 675 (1st Cir. 1967)...............................9

*Nat'l Nonwovens, Inc. v. Consumer Prods. Enters., Inc.*, 397 F. Supp. 2d 245 (D. Mass. 2005) ............................................................9

*Neitzke v. Williams*, 490 U.S. 319 (1989)...........................................................7, 11

*Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, Pa.*, 442 F.3d 1239 (10th Cir. 2006) ...........7

**Page**

*Wedbush Morgan Sec., Inc. v. Kirkpatrick Pettis Capital Mgmt., Inc.,* No. 06-510, 2007
    U.S. Dist. LEXIS 14390 (D. Colo. Feb. 28, 2007) .....................................................14, 15

### STATE CASES

*Rhino Linings U.S.A., Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142 (Colo.
    2003) ..............................................................................................................................12, 13

*Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47 (Colo. 2001)...............................11

### FEDERAL STATUTES

17 U.S.C. § 301 (1998) ..............................................................................................................11

Fed. R. Civ. P. 12(b)(6) .......................................................................................................1, 2, 7

### STATE STATUTES

Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 et seq........................................11

### MISCELLANEOUS

J William Hicks, <u>Resales of Restricted Securities</u>, pp. 457-59..................................................3, 14

Plaintiff R.W. Beck, Inc.'s ("R.W. Beck") has asserted four claims for relief in its Complaint. Specifically, claims for copyright infringement, unfair competition, deceptive trade practices under the Colorado Consumer Protection Act, C.R.S. § 6-1-101 et. seq. ("C.C.P.A."), and unjust enrichment. (Complaint, pp. 4-6.) R.W. Beck's copyright infringement claim rises and falls on whether a particular engineering report (defined below as the "Windsor Report"), that was issued by Defendant E3 Consulting, LLC ("E3") as part of a private bond offering to institutional investors, infringes any protectable copyright owned by R.W. Beck. In short, the similarities that R.W. Beck complains of do not rise to the level of copyright infringement as the vast majority of the material is not R.W. Beck's original work. Any remaining similarities (*i.e.*, less than 130 words out of tens of thousands) are not substantial and hence, not actionable. Next, R.W. Beck's unfair competition and unjust enrichment claims spring from the same facts and theories supporting its copyright infringement claim and are, therefore, pre-empted by federal copyright law. Finally, R.W. Beck's C.C.P.A. claim is fatally flawed because it will be unable to prove the requisite significant impact upon the public. For these reasons, as further explained below, R.W. Beck's Complaint fails to state a claim upon which relief can be granted and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

I.      **RELEVANT BACKGROUND**

A.      **E3's And R.W. Beck's Consulting Services**

It is not a surprise that there are some inherent similarities between E3's Windsor Report and R.W. Beck's prior reports.  These companies both provide similar consulting services[1] to commercial lenders and investment banks in connection with the financing of energy-related projects, and sometimes compete for the same projects.  (Complaint, pp. 2-3, ¶¶ 8-9; Hurd Decl. ¶¶ 5-6.)

Similar to R.W. Beck, E3 memorializes the results of its due diligence findings in the form of so-called "Independent Engineer's Reports" that may be issued for inclusion as a part of a larger private offering document to institutional investors.  (Hurd Decl., ¶ 6.)  Regardless of the project, boilerplate language is often included in these reports that qualifies the findings.  (Id.)  It is also common for the lender/investor to dictate the particular format of the report.  (Declaration of Paul B. Plath ("Plath Decl."), ¶ 8.)

Importantly, E3's services are not offered to the general public, and its reports are not directed to and are not generally issued to the public.  (Hurd Decl., ¶ 10.)  Rather, such reports are provided only to commercial lenders and/or investment banks.  (Id.)

E3 has issued Independent Engineer's Reports in connection with Rule 144A private offerings.  (Hurd Decl., ¶ 7.)  Rule 144A of the U.S. Securities Act of 1933 facilitates private placement offerings of certain unregistered securities to "qualified institutional buyers," as defined by Rule 144A.  (Id.)  Such qualified institutional buyers are not individual members of the general

public, but rather are sophisticated institutional investors,[2] such as MetLife, Franklin Templeton Institutional, and Goldman Sachs, who handle pension or mutual funds with over $100M under management, or broker-dealers with at least $10M portfolios.  (Id.)

**B.      E3's Allegedly Infringing Windsor Report**

In December of 2005, E3 was engaged by a lender called Calyon Corporate and Investment Bank (formerly Credit Lyonnais) ("Calyon") to provide due diligence in connection with financing sought for two coal-fired cogeneration plants owned by Windsor Financing, LLC ("Windsor"). Windsor is owned by Cogentrix Energy ("Cogentrix"), a subsidiary of the Goldman Sachs Group, Inc. ("Goldman Sachs") and is a special-purpose limited liability company organized to facilitate the private offering of bonds.  (Hurd Decl., ¶ 8.)  E3 completed an independent engineering review of both plants; worked closely with Cogentrix and Calyon to evaluate the condition of the plants; reviewed the associated project contracts, operations and maintenance practices, expected capital improvements, environmental compliance and environmental conditions of the plant sites; and provided an independent review of the project's expected financial operating results.  (Id.)  In February of 2006, E3 issued an Independent Engineer's Report to Calyon, which reported E3's findings and became an appendix to a Rule 144A Offering Circular to qualified institutional buyers (the "Windsor Report").  (Id.)  The Windsor Report was not used and/or distributed to the public and was not part of any public offering to individual investors.  (Id., ¶ 9.)

---

[1] As part of its consulting services, E3 conducts technical due diligence (*e.g.*, analyzing the associated technical, environmental, regulatory and commercial aspects) for a particular project to be financed.  (Declaration of Donald J. Hurd ("Hurd Decl."), ¶ 6.)

[2] The U.S. securities laws do not require registration of securities sold to these investors in this type of a transaction as the investor-entities are deemed to be able to fend for themselves in this private

### C.   R.W. Beck's Allegations

The activity complained of by R.W. Beck in its Complaint stems from E3's Windsor Report.[3] In particular, R.W. Beck has alleged that portions of E3's Windsor Report infringe R.W. Beck's Independent Engineer's Report for the Orange Cogeneration Limited Partnership Project ("the Orange Report"). (Complaint, ¶ 14; *see* Plath Decl., Ex. B for complete copy of said report.)  R.W. Beck also points to an Independent Engineer's Report for Sacramento Power Authority Cogeneration Project ("the Sacramento Report") as being subject to copyright protection.  (Id. at ¶¶ 10-12.)  R.W. Beck's claims for copyright infringement, unfair competition, unjust enrichment, and violation of the C.C.P.A. are all allegedly based solely upon the generation and distribution of E3's Windsor Report. (Id. at ¶¶ 25-39.)  Specifically, R.W. Beck presents a comparison between excerpts from the Orange and Windsor Reports, and concludes that alleged similarities between the two support all four of its claims for relief.  (Complaint, ¶¶ 14-15.)

### D.   The Genesis Of R.W. Beck's Reports

E3 does not dispute that portions of R.W. Beck's Sacramento and Orange Reports may contain copyrightable subject matter.  However, the allegedly copied excerpts have their genesis from earlier reports not owned by R.W. Beck and, as a result, the allegedly copied portions are not protectable.

---

transaction.  J William Hicks, Resales of Restricted Securities, pp. 457-59 (Thomson West ed. 2007), attached hereto as Exhibit 1.

[3] To date, R.W. Beck has failed to present E3 with any other alleged instance of copyright infringement despite the fact that E3 has already provided R.W. Beck with a detailed analysis of why the Windsor Report does not infringe any R.W. Beck copyright.  (See May 4, 2007 Correspondence from Benjamin Lieb to Natalie Hanlon-Leh, attached hereto as Ex. 2.)

### 1.     The Sacramento Report

R.W. Beck's Sacramento Report (*i.e.*, Ex. 2 to R.W. Beck's Complaint) was primarily authored by E3's current Senior Vice President, Paul B. Plath, who was working for R.W. Beck at the time. (Complaint, Ex. 2 (noting "R.W. Beck, Inc. employer for hire of Paul Plath"); Plath Decl., ¶¶ 5-9.)   As will be explained, portions of this report were copied at the request of the lead investment bank from an earlier report created by Black & Veatch Corporation ("Black & Veatch") for an unrelated project (the "Black & Veatch Report").

In 1994, R.W. Beck was selected to be the independent engineer for the Sacramento Power Authority and Sacramento Cogeneration Authority power projects by the Sacramento Municipal Utility District ("SMUD"). (Plath Decl., ¶ 6.) The Sacramento Power Authority and Sacramento Cogeneration Authority were special entities created by SMUD specifically for the purposes of financing and building two power plants that provide electric power to SMUD. (Id.) Goldman Sachs was the lead investment bank for the project. (Id., ¶ 7.)

A kick-off meeting for the Sacramento projects was held in San Francisco in the Summer of 1994. (Plath Decl., ¶ 7.)   That meeting was attended by representatives of R.W. Beck (including Mr. Plath), SMUD, Goldman Sachs, Morgan Stanley & Co., and others. (Id.) During that meeting, R.W. Beck was informed that in 1993 SMUD had completed financing of a similar project known as the Central Valley Financing Authority ("CVFA"). (Id.) Black & Veatch had been selected as the independent engineer for the CVFA project. (Id.) SMUD and Goldman Sachs had found that the financing was very successful for the CVFA project and wished to use the same financing plan and similar documents for the Sacramento projects. (Id.) Accordingly, a Goldman Sachs representative provided Mr. Plath with a copy of the Black & Veatch  Report for the CVFA project and asked him

to follow its format and content when preparing the Sacramento Report (including, but not limited to, copying certain conclusions).  (Id.)  In short, the entire format of the Sacramento Report was dictated by Goldman Sachs and the other parties involved in the financing, from the style of the headings down to the specific font and pitch of the text.  (Id., ¶ 8.)  Following these instructions, Mr. Plath used the Black & Veatch Report as a template to create the Sacramento Report.  (Plath Decl., ¶ 9, Ex. A.)  Ultimately, the Sacramento Report was attached as an appendix to a private bond offering.  (Complaint, Ex. 2.)

### 2.      The Orange Report

R.W. Beck's Orange Report also finds its roots in the Black & Veatch Report, and Mr. Plath was one of its primary authors.  (Plath Decl., ¶¶ 9-10.)  Starting in mid-1996, R.W. Beck was hired by CS First Boston as the independent engineer to prepare a report for the Orange Cogeneration Limited Partnership Project located near Bartow, Florida.  (Id. at 9-10.)  CS First Boston requested that R.W. Beck prepare a report for this project similar to those prepared for the Sacramento projects. (Id.)  As CS First Boston was using many of the same legal and technical advisors for the Orange project as were used by Goldman Sachs on the Sacramento projects, R.W. Beck was directed by CS First Boston to use the Sacramento project reports as a template for the Orange Report.  (Id.)  In fact, an electronic version of one of the Sacramento project reports was actually used to create the Orange Report.  (Id.)  The Orange Report was subsequently attached as an appendix to a confidential $110M offering circular.  (Complaint, Ex. 1.)

## II.   LEGAL ARGUMENT

All four claims of R.W. Beck's Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.[4]   E3 can prove no set of facts in support of its copyright infringement and C.C.P.A. claims that would entitle it to relief, <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Maher v. Durango Metals, Inc.</u>, 144 F.3d 1302, 1304 (10th Cir. 1998), and its unfair competition and unjust enrichment claims are pre-empted as a matter of law.  <u>Neitzke v. Williams</u>, 490 U.S. 319, 326-27 (1989); <u>Ehat v. Tanner</u>, 780 F.2d 876, 877-78 (10th Cir. 1985). Accordingly, E3's Motion should be granted in its entirety.

### A.   R.W. Beck's Copyright Infringement Claim Is Meritless

As noted above, R.W. Beck's copyright infringement claim is predicated upon a comparison between an excerpt from the E3's Windsor Report and the Orange Report.  (<u>See</u> Complaint, ¶ 14, Exs. 3 & 4.)  This simple comparison of the excerpts, however, is legally inappropriate and wholly insufficient for purposes of determining or establishing copyright infringement.   Indeed, an examination of the underlying facts shows that there is no copyright infringement.

---

[4] E3 does not believe that its request to dismiss R.W. Beck's copyright claim need be treated as one for summary judgment under Rule 56.  The exhibits to R.W. Beck's Complaint are considered to be part of its Complaint.  <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1112 (10th Cir. 1991); <u>see also</u> <u>Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, Pa.</u>, 442 F.3d 1239, 1244 (10th Cir. 2006).  Similarly, the Black & Veatch Report submitted herewith is central to the claims at issue and the Court may take judicial notice of this earlier 1993 work.  <u>Continental X-Ray Corp. v. Home Indem. Co.</u>, No. 96-5250, 1997 U.S. Dist. LEXIS 2558 at *5 (N.D. Ill. Mar. 4, 1997) (recognizing that the Court can take judicial notice of certain facts in a Rule 12 context).

Even if treated under Rule 56, E3 believes that it is entitled to a judgment as a matter of law.  R.W. Beck cannot dispute that the relevant portions of its Orange and Sacramento Reports were taken directly from the earlier Black & Veatch Report, and that the Windsor Report has had no significant impact upon the public.  Accordingly, there is no genuine issue of material fact and (as further explained <u>infra</u>) precluding summary judgment.

### 1.   R.W. Beck's Copyright Infringement Claim Is Based Upon A Misapplication Of The Law

To prevail on its claim of copyright infringement, R.W. Beck must establish: (1) that it possesses a valid copyright;[5] and (2) that there has been "copying" of protectable elements of that copyright.[6] Country Kids 'N City Slicks, Inc. v. Sheen, 77 F.3d 1280, 1284 (10th Cir 1996). Merely alleging an act of copying alone cannot establish copyright infringement.

For liability to attach, there must be a substantial similarity between those aspects of the Orange Report that are legally protectable and the allegedly infringing Windsor Report. Id.; Churchill Livingstone, Inc. v. Williams & Wilkins, 949 F. Supp. 1045, 1053 (S.D.N.Y. 1996). To make this determination, the so-called "abstract-filtration-comparison" test is applied. Country Kids 'N City Slicks, Inc., 77 F.3d at 1284-85.

Under the abstraction-filtration-comparison test, non-copyrightable ideas must be first abstracted from the expression.[7] Id. at 1285. After abstraction, unoriginal elements must be filtered from the Orange Report. Id. What expression remains is then compared against the Windsor Report to determine if the two are substantially similar. Id. Applying this test, it is plain that there is no factual support or basis for R.W. Beck's copyright infringement claim and it must be dismissed.

---

[5] For purposes of this Motion, the validity of R.W. Beck's alleged copyrights is presumed, but not conceded.

[6] R.W. Beck has not even alleged that any "protectable elements" of its copyrighted works have been copied. (See Complaint, ¶¶ 18-24.)

[7] Because the Windsor Report and Orange Report are both directed to the same subject matter and type of audience, there are certainly basic similarities that stem from idea rather than expression. Durham Indus., Inc. v. Tomy Corp., 630 F.2d 905, 913 (2d Cir. 1980) ("[W]here the protected work and the accused work express the same idea, the similarity that inevitably stems solely from the commonality of the subject matter is not proof of unlawful copying."). If necessary, these ideas would need to be first abstracted from the Orange Report. However, because abstraction is not

> **a.    Material from the Black & Veatch Report is unoriginal and must be filtered from the Orange Report**

Turning to the filtration step, it cannot be disputed that the Black & Veatch Report pre-dates the Orange Report and that the excerpt of the Orange Report in question was derived from the Black & Veatch Report.  (Plath Decl., ¶¶ 9-10.)  Therefore, text originating from the Black & Veatch Report is unoriginal to the Orange Report and must be filtered out.  Once this unoriginal material is filtered there is little original material left in the excerpt of the Orange Report.  (Id., Ex. C & D.)

> **b.    A comparison of remaining expression confirms no substantial similarity between the Windsor and Orange Reports and no copyright infringement**

Comparing the remaining "original" expression in the Orange Report to the Windsor Report reveals that the Windsor Report has barely any similarity to the Orange Report.[8]  Out of a total of approximately 1500 words in the excerpt of the Orange Report in the Complaint, only 130 words (less than 10%) are the same in the Windsor Report.  (Plath Dec., ¶ 12, Ex. D.)  The Orange Report, however, is actually a much larger document.  Accordingly, the actual degree of similarity between

---

necessary to show that there is no infringement, no abstraction of the Orange Report has been performed.  The lack of any abstraction analysis actually favors R.W. Beck.

[8]  For purposes of this Motion, it is presumed, but not conceded, that this remaining expression is protectable by copyright.  However, it appears that the remaining words and phrases in common between the Orange and Windsor Reports are functional because they are dictated purely by the purpose of the reports and the intended audience and as such, are not protectable by copyright.  See e.g., Hutchins v. Zoll Med. Corp., No. 06-1539, 2007 U.S. App. LEXIS 15809, at *14-15 (Fed. Cir. July 3, 2007) (finding words and phrases were standard instructions devoid of creative expression directed solely to functional considerations); Morrissey v. Proctor & Gamble Co., 379 F.2d 675, 678-79 (1st Cir. 1967) (holding for defendant where the topic necessarily required at best only a limited number of forms of expression, and to permit copyrighting of such a limited number of forms would exhaust all possibilities of future use of the substance); Nat'l Nonwovens, Inc. v. Consumer Prods. Enters., Inc., 397 F. Supp. 2d 245, 256 (D. Mass. 2005) (work viewed as a whole contained

the Windsor and Orange Reports is markedly less than 10%. Indeed, there are approximately 22,800 words in the Orange Report so it appears that less than 1% of those words are the same in the Windsor Report.[9] (Id., ¶ 10.)

There is simply no substantial similarity of even arguably protectable material between the Windsor and Orange Reports and hence, the Windsor Report is non-infringing. See Churchill Livingstone, Inc., 949 F. Supp. at 1053 ("[I]f the similar material in defendant's work is not a substantial part of Plaintiff's work, there is no substantial similarity and hence no infringement."); see also Davis v. The Gap, Inc., 246 F.3d 152, 172-73 (2d Cir. 2001) (de minimis similarity is non-infringing). Therefore, R.W. Beck's copyright infringement claim should be dismissed with prejudice. Conley, 355 U.S. at 45-46.

### B.    R.W. Beck's Unfair Competition And Unjust Enrichment Claims Are Pre-Empted By Federal Copyright Law

R.W. Beck also asserts claims for unjust enrichment and unfair competition under Colorado law. (Complaint, ¶¶ 25-28, 36-39.) To support these state law claims, R.W. Beck relies on the same set of facts that support its federal copyright infringement claim. (Id.)

Section 301 of the U.S. Copyright Act pre-empts any state law cause of action that is equivalent in substance to a federal copyright infringement claim:

> Congress expressly stated that section 301 is intended to prevent 'the States from protecting . . . [a work] even if it fails to achieve Federal statutory copyright because it is too minimal or lacking in originality to qualify, or because it has fallen into the public domain.' State law forbidding others to copy an article 'unprotected by a patent or a copyright . . . would interfere with the Federal policy, found in Article I,

---

no stylistic flourishes or any other forms of creative expression that transcend the functional core of the directions).

[9] Since R.W. Beck obviously has the entire Windsor Report, if there were other similarities to the Orange Report, R.W. Beck would have pointed to those similarities in its Complaint.

> Section 8, Clause 8 of the Constitution and in implementing Federal statues, of allowing free access to copy whatever the Federal patent and copyright laws leave in the public domain.'

Ehat, 780 F.2d at 877-78 (internal citations omitted); 17 U.S.C. § 301 (1998).  The Tenth Circuit has held that unfair competition and unjust enrichment claims are equivalent to a federal copyright infringement claim and pre-empted by federal copyright law.  Ehat, 780 F.2d at 878-79.  Accordingly, R.W. Beck's unfair competition and unjust enrichment claims must be dismissed as a matter of law.  Neitzke, 490 U.S. at 326-27.

### C.    R.W. Beck's C.C.P.A. Claim Is Meritless

R.W. Beck's C.C.P.A. claim asserts that:

30.    In the course of its business, E3 Consulting knowingly passed off text from R.W. Beck's proprietary and copyrighted Reports as E3 Consulting's own text.[10]

31.    In the course of its business, E3 Consulting knowingly made false representations about the source of its reports.

32.    E3 Consulting's acts constitute violations of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105.

(Complaint, ¶¶ 30-32.)

The C.C.P.A. was enacted to deter and punish deceptive trade practices against the public by providing remedies for consumer fraud.  Showpiece Homes Corp. v. Assurance Co. of Am., 38 P.3d 47, 50-51 (Colo. 2001).  In order for R.W. Beck to prevail on its C.C.P.A. claim, it must show that:

(1)    [E3 has] engaged in an unfair or deceptive trade practice;

---

[10] R.W. Beck has misconstrued the text of Section 6-1-105 of the C.C.P.A.  In actuality, Section 6-1-105(1)(a) defines a deceptive trade practice as occurring when a person "knowingly passes off goods, services, or property as those of another." Colo. Rev. Stat. § 6-1-105(1)(a) (emphasis added).  R.W. Beck has not alleged (nor is there any evidence suggesting to the contrary) that E3 has ever presented any of its materials as emanating from R.W. Beck.  Thus, the alleged conduct in Paragraph 30 of R.W. Beck's Complaint cannot give rise to a C.C.P.A. claim.

(2)     the challenged practice occurred in the course of [E3's] business, vocation, or occupation;

(3)     [the challenged practice] significantly impacts the public as actual or potential consumers of [E3's] goods, services or property;

(4)     [R.W. Beck] suffered injury in fact to a legally protected interest; and

(5)     the challenged practice caused [R.W. Beck's] injury.

Rhino Linings U.S.A., Inc. v. Rocky Mountain Rhino Lining, Inc., 62 P.3d 142, 146-47 (Colo. 2003), citing, Hall v. Walter, 969 P.2d 224, 235 (Colo. 1998).  R.W. Beck cannot prove any set of facts supporting a finding of significant public impact and, as such, its C.C.P.A. claim must be dismissed.

### 1.     R.W. Beck's C.C.P.A. Claim Is Insufficiently Pled

R.W. Beck has not pled how the Windsor Report has "significantly impacted" the public-at-large, nor has it asserted that these consumers are actual or potential customers of E3's goods or services.  "Although factual allegations are accepted as true for purposes of resolving a Rule 12(b)(6) motion, the Court does not need to accept as true [R.W. Beck's] unsupported 'conclusory allegations.'"  Anderson v. State Farm Mutual Automobile Insurance Co., 2004 U.S. Dist. LEXIS 27305, No. 02-382, *8-9 (D. Colo. June 28, 2004) (quoting Hall, 935 F.2d at 1110 (10th Cir. 1991)).  Indeed, this Court has concluded that C.C.P.A. violations must be plead with particularity.  Anderson, 2004 U.S. Dist. LEXIS 27305, at *23-24.  R.W. Beck has failed to satisfy the basic pleading requirements for a C.C.P.A. claim.  For this reason alone, this claim should be dismissed.

### 2.     R.W. Beck Cannot Prove A Significant Public Impact

The considerations relevant to determining the potential impact on the public are:  "(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and

bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future."   Rhino Linings, 62 P.3d at 149.

### a.   No consumers were directly affected by the Windsor Report

R.W. Beck appears to allege that the dissemination of the allegedly infringing portions of the Windsor Report somehow gives rise to a C.C.P.A. claim.  (Complaint, ¶¶ 30-35.)  R.W. Beck has not alleged that providing the Windsor Report in its entirety is somehow actionable.  However, there is no explanation in R.W. Beck's Complaint as to how generic phrases like, "[a]s Independent Engineer, we have made no determination as to the validity and enforceability of any contract, agreement, rule or regulation applicable to the Project and its operations[,]" can have any impact on any consumers.  R.W. Beck has also conveniently glossed over the indisputable facts that the Windsor Report was requested by a commercial bank, paid for by a commercial borrower, and distributed to an investment banking firm as part of a private unregistered securities offering to institutional investors. (Hurd Decl., ¶ 9.)  No members of the consuming public were ever involved or affected.[11]  This is simply not the type of transaction contemplated by the C.C.P.A.  Rhino, 62 p.3d at 150 (C.C.P.A. intended to reach practices that "affect consumers generally. . . .")  Given these circumstances, R.W. Beck will not be able to demonstrate that the Windsor Report as a whole, much less the allegedly problematic portions, has had any impact whatsoever on consumers.  This factor weighs against R.W. Beck's C.C.P.A. claim.

---

[11] In this regard, the Windsor Report appears to be no different than R.W. Beck's Sacramento and Orange Reports that were issued as part of similar private bond offerings.  (Complaint, Exs. 1 and 2.)

**b.      The recipients of the Windsor Report are highly
sophisticated**

The Windsor Report was only provided to highly sophisticated institutions, not the general

public, as part of a private unregistered Rule 144A bond offering.  (Hurd Decl., ¶ 9.)  Even the U.S.

government understands that that only highly sophisticated entities are involved in this type of

transaction and as such, it does not require that the securities be registered.   (J William Hicks,

Resales of Restricted Securities, pp. 457-59 (Thomson West ed. 2007).

A similar scenario was rejected by this Court as having the requisite public impact.   In

Wedbush Morgan Sec., Inc. v. Kirkpatrick Pettis Capital Mgmt., Inc., the Court evaluated an

investment audit report provided to a single entity, Douglas County, Colorado, that allegedly

violated the C.C.P.A.  2007 U.S. Dist. LEXIS 14390, No. 06-510, at *23-25 (D. Colo. Feb. 28,

2007).  The plaintiff argued that the report was directed to all residents of the county and, therefore,

all Douglas County residents should be considered as affected consumers.  Id. at *24. This Court

rejected this argument, recognizing the County as a single consumer and a separate entity from its

residents.  Id.  This Court also found that the County was a sophisticated entity and could have

obtained other advice concerning the report at issue if it so desired. Id. at *25.  Similarly, R.W. Beck

will not be able to rebut that the recipients of the Windsor Report (e.g., Goldman Sachs, etc.) are

highly sophisticated and not significantly impacted.  This factor also weighs against a sustainable

C.C.P.A. claim.

**c.      There is no evidence of prior or future impact on
other consumers**

R.W. Beck has not alleged and will not be able to allege any facts supporting any impact on

consumers caused by the Windsor Report.  There is simply no evidence to connect the common

statements in the Windsor Report to any consumers in any manner or in any context, either in the past or in the future.  See Wedbush Morgan Securities, Inc., 2007 U.S. Dist. LEXIS 14390, at *24 ("The connection between the Report and any financial impact on the individual residents is entirely too tenuous and speculative to establish a broad public impact.").  Consequently, this factor also weighs against a sustainable C.C.P.A. claim and requires dismissal with prejudice. Conley, 355 U.S. at 45-46.

III.   **CONCLUSION**

All of the claims of R.W. Beck's Complaint should be dismissed.  R.W. Beck's federal copyright claim is unfounded as the overwhelming majority of the allegedly infringed material was copied by R.W. Beck from the Black & Veatch Report and is unoriginal and unprotectable.  Any remaining similarity between E3's Windsor Report and R.W. Beck's Orange Report is insubstantial, *de miminis* and not actionable.  Next, R.W. Beck's unfair competition and unjust enrichment claims are predicated on the exact same facts as its copyright claim and, therefore, pre-empted by federal copyright law.  Finally, R.W. Beck's C.C.P.A. claim is insufficiently pled, cannot possibly support a finding of a significant public impact, and is not actionable.  For these reasons, E3 respectfully respects that this Motion be granted in its entirety.

DATED:  August 22, 2007.   Respectfully submitted,

By:  s/ Benjamin B. Lieb
    **Benjamin B. Lieb**
    **Scott R. Bialecki**
    SHERIDAN ROSS P.C.
    1560 Broadway, Suite 1200
    Denver, Colorado  80202-5141
    Telephone: 303-863-9700
    Facsimile: 303-863-0223
    E-mail:  blieb@sheridanross.com
        sbialecki@sheridanross.com
        litigation@sheridanross.com

ATTORNEYS FOR DEFENDANT
E3 CONSULTING, LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 22, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and I hereby certify that I have mailed or served the document or paper to the following non-CM/ECF participants in the manner (mail, hand delivery, etc.) indicated by the non-participant's name:

        Natalie Hanlon-Leh, Esq.
        Mary V. Sooter, Esq.
        Faegre & Benson
        3200 Wells Fargo Center
        1700 Lincoln Street
        Denver, Colorado  80203-4532
        Telephone: 303-607-3500
        E-mail:      nhanlon-leh@faegre.com
                   msooter@faegre.com

            s/ Kristin M. Heil
        Kristin M. Heil
        Assistant to Benjamin B. Lieb
        SHERIDAN ROSS P.C.
        1560 Broadway, Suite 1200
        Denver, CO  80202-5141
        Telephone:   303-863-9700
        Facsimile:   303-863-0223
        E-mail:      kheil@sheridanross.com
                   litigation@sheridanross.com

J:\5683\-1\Pleadings\Motion to Dismiss R.W. Beck Complaint2.doc