# Securities Law Handbook Series

# Resales of Restricted Securities

## 2007 Edition

### by J. William Hicks

**THOMSON**
**WEST**

For Customer Assistance Call 1-800-328-4880

Mat #40504876

# Chapter 7

# Private Resales: Rule 144A

I. INTRODUCTION
§ 7:1    Purpose and theory
§ 7:2    Overview
§ 7:3    Persons who benefit from rule
§ 7:4    Related issues
§ 7:5    —Investment companies
§ 7:6    ——Liquidity requirements
§ 7:7    ——Nonpublic offering limitation
§ 7:8    —Uniform Net Capital Rule
§ 7:9    —Credit arrangements by brokers or dealers—Regulation T
§ 7:10   ——Section 11(d)(1)
§ 7:11   —Regulation M
§ 7:12   ——Trading Practice Rules: Regulation before 1997
§ 7:13   ——Current regulation
§ 7:14   Interaction with Regulation S

II. ELIGIBLE SECURITIES
§ 7:15   Introduction
§ 7:16   Ineligible securities
§ 7:17   —Publicly traded securities
§ 7:18   —"Same class as"
§ 7:19   ——Substantially identical securities
§ 7:20   ——Convertible and exchange securities and warrants

III. ELIGIBLE PURCHASERS
§ 7:21   Introduction to qualified institutional buyers
§ 7:22   Designated entities
§ 7:23   —Entities
§ 7:24   —Acting for an eligible account
§ 7:25   —Qualifying amount: Overview
§ 7:26   ——Calculation of qualifying amount
§ 7:27   ——Excluded securities
§ 7:28   ——Valuation at cost
§ 7:29   ——Consolidated financial statements
§ 7:30   —Investment companies
§ 7:31   —Entities owned entirely by qualified institutional buyers
§ 7:32   —Registered broker-dealers
§ 7:33   ——Eligibility: Dealer that meets qualifying amount
§ 7:34   ——Eligibility: Dealer as riskless principal
§ 7:35   —Banks and savings and loan associations
§ 7:36   ——Combined securities ownership and net worth test
§ 7:37   —Proof of eligibility
§ 7:38   ——Basis for reliance

## IV. NOTIFICATION TO BUYER

§ 7:39 Notification to buyer

## V. INFORMATION REQUIREMENTS

§ 7:40 Introduction
§ 7:41 Transactions without information obligation
§ 7:42 Transactions with information obligation

## VI. PROHIBITION AGAINST GENERAL SOLICITATION

§ 7:43 Introduction
§ 7:44 Administrative interpretations
§ 7:45 —Research reports under Rules 138 and 139
§ 7:46 —Limited Solicitations

## VII. STATUS OF SECURITIES SOLD UNDER RULE 144A

§ 7:47 Status of securities sold under Rule 144A

## VIII. IMPACT OF RULE 144A

§ 7:48 Introduction
§ 7:49 Foreign issuers
§ 7:50 Institutional investors
§ 7:51 Impact on U.S. public markets
§ 7:52 Rule 144A market
§ 7:53 Investment companies
§ 7:54 Overall assessment of Rule 144A

---

KeyCite®: Cases and other legal materials listed in KeyCite Scope can be researched through the KeyCite service on Westlaw®. Use KeyCite to check citations for form, parallel references, prior and later history, and comprehensive citator information, including citations to other decisions and secondary materials.

---

## I. INTRODUCTION

### § 7:1 Purpose and theory

Rule 144A, which became effective April 30, 1990,[1] addresses the ambiguity surrounding private resales of restricted securities[2] by exempting from the registration

---

[Section 7:1]

[1]Rule 144A was initially proposed in Sec. Act Release No. 6806, 1988 WL 241209, [1988–1989 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 84,335 (Oct. 25, 1988) (hereinafter Release No. 6806); was reproposed in Sec. Act Release No. 6839, 1989 WL 257421, [1989 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 84,427 (July 11, 1989) (hereinafter Release No. 6839); and was adopted by the Commission on April 19, 1990, in Sec. Act Release No. 6862, 1990 WL 311657 (Apr. 23, 1990) (hereinafter Release No. 6862). The Rule was amended in Sec. Act Release No. 6963, 1992 WL 312441, [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 85,052 (Oct. 22, 1992), in substantially the form as proposed in Securities Act Release No. 6942, 1992 WL 172785, [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 85,014 (July 16, 1992), and became effective October 28, 1992. The North American Securities Administrators Association, Inc. endorsed the adoption of Rule 144A on April 19, 1990. NASAA L. Rep. (CCH) ¶ 7031, at 7039.

[2]See Rule 144(a)(3), 17 C.F.R. § 230.144(a)(3). Because this exemption does not fit squarely within either the Section 4(2) (private sale by the issuer) or Section 4(1) (trading) exemptions from the registration provisions of Section 5, it has been denoted the Section 4(1½) exemption. See Ch 6.

provisions of the Securities Act certain reoffers and resales of securities of foreign and domestic issuers. Conceptually, an exemption from registration for this type of transaction is most clearly within the scope of the Act when the resale of restricted securities is made to a party able to "fend for itself" in the marketplace and is effected in a private transaction not involving the dangers attendant upon a public offering. It is precisely this situation that Rule 144A addresses. The Rule provides a nonexclusive safe harbor[3] from the registration requirements of the Act for resales of certain restricted securities to any "qualified institutional buyer," as that term is defined. The operation of Rule 144A turns on four factors: eligible securities,[5] eligible purchasers,[6] buyer notification,[6] and information requirements.[7]

The SEC views Rule 144A as "the first step toward achieving a more liquid and efficient institutional resale market for unregistered securities."[8] To this end, on April 27, 1990, the SEC approved NASD rules for PORTAL, a screen-based, computer and communication system for the primary placement and secondary trading of unregistered securities that are eligible for Rule 144A resales.[9] It expects to monitor the evolution of this market and to make appropriate changes in the exemption. According to the adopting Release, issues that the Commission expects to consider are "the nature and number of regular participants in the market, the types of securities traded, the liquidity of the market, the extent of foreign issuer participation in the private market, the effect of the Rule 144A market on the public market, and any perceived abuses of the safe harbor."[10]

Rule 144A provides protection against the possibility that a resale transaction

---

[3]The phrase "nonexclusive safe harbor" means that the failure to fully comply with the particular rule (safe harbor) does not preclude reliance on another exemption that may be applicable.

[4]See generally § 7:15.

[5]See generally § 7:21.

[6]See generally § 7:39.

[7]See generally § 7:47.

[8]Release No. 6862, at 80,639.

[9]Exchange Act Release No. 27956 (Apr. 27, 1990). In Exchange Act Release No. 44042 (March 6, 2001), 2001 WL 224976, the SEC adopted NASD rule changes that are designed to help PORTAL. Under the revisions to the PORTAL Rules, members are required to report secondary market transactions in PORTAL equity securities through the Automated Confirmation Transaction Service ("ACT"), subject to certain exemptions. Members are not required to use ACT's automated services for comparison, confirmation, and the forwarding of confirmed trades to Depository Trust Corporation ("DTC") for settlement; however, these services will remain available for members that chose to use them. There will be no public dissemination of information in trade reports submitted to the association with respect to PORTAL securities and depository-eligible Rule 144A investment grade rated debt issues. The SEC explained its decision to adopt the revisions:

The Commission recognizes that the PORTAL Market has not developed as originally envisioned by the NASD. Over the last ten years, despite the NASD's efforts to encourage use of the PORTAL Market as a trading venue for Rule 144A securities, currently, its only function is reviewing whether issues of privately placed securities meet the eligibility requirements of Rule 144A. The instant rule filing represents the NASD's attempt to revitalize the Market by paring down its rules and regulations regarding who can trade PORTAL securities, and clarifying the requirements for reporting transactions involving PORTAL securities.

The Commission believes that the proposed rule change will significantly simplify the PORTAL Market specifically in that members will only be required to report secondary market transactions in PORTAL equity securities through ACT. Members will not be required to use ACT's automated services for comparison, confirmation, and the forwarding of confirmed trades to DTC for settlement and may use other systems that offer greater liquidity and incentives to trade Rule 144A securities. Also, the proposed rule change eliminates the requirement that those using the PORTAL Market receive designation as "PORTAL" brokers, dealers or investors. All NASD members and issuers will now have access to the PORTAL Market. The Commission believes that this simplification and expansion of access will serve to remove impediments to the Market, and will help to perfect the mechanics of the Market in accordance with the goals stated in Section 15A(b)(6).

Id. at *8.

[10]Release No. 6862, at 80,639. The SEC is not the only governmental party that is interested in the impact of Rule 144A on securities transactions. In a letter to SEC Chairman Richard C. Breeden, dated April 19, 1990, Congressman John D. Dingell, Chairman, House Committee on Energy and Com-

Ex. 2; Pg. 4

merce, and Congressman Edward J. Markey, Chairman, House Subcommittee on Telecommunications and Finance, expressed their concern about "the possible development of a two-tiered securities market for U.S. investors, one public and one private, and the serious negative implications of such a development; the diminished availability of many quality investments to smaller investors and, conversely, the greater likelihood that poor investments will be passed on to unwitting investors through mutual and pension funds or other avenues of leakage; and the rule's diminution of the amount and type of disclosure, particularly with regard to foreign companies about which U.S. investors have historically had little information." Rule 144A—Congressional Letter, [1989–1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 84,600, at 80,695. It also disclosed their concern that Rule 144A might be beyond the scope of the powers of the Commission. *Id.* In light of these concerns, the Congressmen requested that the Commission report back to them on a consistent basis (every six months) and respond to the following questions:

1. Is Rule 144A serving the policy purpose of attracting more foreign issuers to the U.S.? How many foreign issuers have entered the U.S. private placement market since the rule's adoption, and for what percentage of the gross dollar amount of offerings in that market are they responsible? What is the percentage of foreign versus U.S. issuer participation in this market?

2. Who are the purchasers (*e.g.*, mutual funds, pension funds, insurance companies, etc.) of securities placed pursuant to the Rule 144A safe harbor in both the primary and secondary markets? Please indicate the percentage of the over-all market commanded by each type of purchaser.

3. To what extent are banks and thrift institutions (by number and with respect to the percentage of the overall market for which they account) participating in this market? Of these, how many have established separate broker-dealer entities through which all such activity is conducted? Are these institutions participating as purchasers in this market, and if so, is there a need, for safety and soundness or other prudential reasons, to limit their ability to do so, either by raising the net worth qualifying threshold or by other means?

4. Is the dollar threshold for participation as a purchaser sufficient for purposes of investor protection? Have investors in funds that purchase securities issued under the Rule 144A safe harbor received adequate and effective disclosure of the risks associated with those securities? Please assess on an ongoing basis the quality, quantity, and effectiveness of disclosure in this market.

5. To what extent has there been a shift of offerings from public to private markets among U.S. issuers? Has there been a discernible impact on the depth and liquidity of the public markets for securities? Has there been a decrease in pricing efficiency and, consequently, a diminution in investor confidence, in the public securities markets? Does the response differ according to whether debt or equity is at issue?

6. To the extent that debt issued under Rule 144A is rated by the ratings agencies (*e.g.*, Moody's Investors Service and Standard & Poor's Corporation), how do these ratings break down? How do these issues compare to public issues?

7. What has been the rate of default on debt securities issued pursuant to the Rule 144A safe harbor?

8. How are Rule 144A securities priced on issuance and in the secondary market and how reliable have such prices proven to be to market participants and investors? Should our regulators more closely scrutinize pricing practices for potential abuses? To what extent has the NASD's PORTAL system addressed any of these problems?

9. Please explain and assess the effectiveness of any and all safeguards imposed in the rule or otherwise regarding leakage. Notwithstanding the rule's attempt to exclude fungible securities, have there been any "leaks" of Rule 144A-issued stock fungible with publicly-traded and registered stock from the private into the public markets? Have any parallel public and private markets developed as a result of an issuer of securities traded in the Rule 144A market thereafter listing those securities on an exchange or as a result of those securities being quoted on an automated inter-dealer quotation system?

10. Is there any evidence that Rule 144A has provided an alternative for controlling interests in companies that have been taken private in leveraged buy-outs to withdraw their investment without taking the company public again?

11. Of the companies issuing securities pursuant to Rule 144A, how many of them have been participants in the public U.S. markets within the past ten years?

12. For purposes of the investment restrictions in the Investment Company Act, has the market in Rule 144A-issued securities been sufficiently liquid to justify investment in such securities by investment companies in excess of the 10% statutory limitation? Please assess the quality of the performance of the boards of directors of such companies in measuring and responding

involving unregistered securities will be deemed a "distribution" and that those participants in the transaction will violate the registration and prospectus delivery requirements of Section 5. For persons other than issuers or dealers, the Rule accomplishes this objective by stating that any such person who offers and sells eligible securities in accordance with the Rule will be deemed not to be engaged in a distribution, and therefore not to be an underwriter within the meaning of Sections 2(a)(11) and 4(1) of the Act.[11] Because of this exemptive presumption, the seller is able to rely on the Section 4(1) trading exemption for transactions by persons other than issuers, underwriters or dealers. Rule 144A also extends a benefit to dealers who are permitted to rely upon Section 4(3) for their part in resale transactions except (1) when they are participants in a distribution or (2) within a specified period after securities have been offered to the public.[12] The Rule provides that if all of the conditions are met a dealer will be deemed not to be a participant in a distribution of securities within the meaning of Section 4(3)(C) of the Act and not to be an underwriter of such securities within the meaning of Section 2(a)(11) of the Act. In addition, the securities will be deemed not to have been offered to the public within the meaning of Section 4(3)(A) of the Act.[13] By eliminating the exceptions to the ordinary dealer exemption, Rule 144A allows a dealer to rely on Section 4(3) for its part in the resale transaction. Rule 144A offers no protection to issuers who must find their own exemption for the offer and sale of unregistered securities.

## § 7:2 Overview

Rule 144A consists of seven preliminary notes and five paragraphs. The preliminary notes remind persons intending to resell in reliance on the Rule that the nature of the safe harbor is limited. These reminders are:

(1) Rule 144A exempts the seller only from the registration requirements and not from the antifraud and civil liability provisions.[1]

(2) It is not exclusive.[2]

(3) A transaction in technical compliance with the Rule is not exempted where it is part of a plan or scheme to evade the registration provision of the Act.[3]

(4) The exemption does not obviate the need to satisfy the securities registration

---

to changes in liquidity for purposes of that limitation.

13. Is there any need to amend Rule 144A in light of the above or any other considerations, and if so, in what ways? Is there any need for legislation in this area to address any outstanding issues?

*Id.* at 80,695–80,696.

[11]Rule 144A(b) states:

*Sales by Persons other than Issuers or Dealers.* Any person, other than the issuer or a dealer, who offers or sells securities in compliance with the conditions set forth in paragraph (d) of this section shall be deemed not to be engaged in a distribution of such securities and therefore not to be an underwriter of such securities within the meaning of Sections 2(11) and 4(1) of the Act.

[12]*See generally* Hicks, Exempted Transactions Under the Securities Act of 1933, Ch. 12.

[13]Rule 144A(c) states:

*Sales by Dealers.* Any dealer who offers or sells securities in compliance with the conditions set forth in paragraph (d) of this section shall be deemed not to be a participant in a distribution of such securities within the meaning of Section 4(3)(C) of the Act and not to be an underwriter of such securities within the meaning of Section 2(11) of the Act, and such securities shall be deemed not to have been offered to the public within the meaning of Section 4(3)(A) of the Act.

[Section 7:2]

[1]Rule 144A, Preliminary Note 1.

[2]*Id.* at Preliminary Note 2.

[3]*Id.* at Preliminary Note 3.