IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:07-cv-01378-RPM-BNB

R.W. BECK, INC.,
a Washington corporation,

    Plaintiff,

v.

E3 CONSULTING, LLC,
a Colorado limited liability company,

    Defendant.

---

**DECLARATION OF DONALD J. HURD IN SUPPORT OF E3 CONSULTING, LLC's MOTION TO DISMISS ALL CLAIMS OF R.W. BECK'S COMPLAINT**

---

I, Donald J. Hurd, declare and state as follows:

1. I am over the age of 18. I have personal knowledge of the facts set forth below, and if called upon to do so, could and would competently testify thereto.

2. I am the President and Chief Executive Officer of E3 Consulting, LLC ("E3"), a Colorado limited liability company, which has a principal address of 3333 S. Bannock St., Suite 500, Englewood, CO 80110, and have served in this capacity since 1999.

3. I have a B.S. in Mechanical Engineering Technology from Metropolitan State College of Denver and approximately 18 years of experience conducting various aspects of due diligence from pre-financial closing to annual operations reviews. I also have over 25 years of engineering and business experience that focuses primarily on energy production systems.

4. It is my understanding that R.W. Beck, Inc. ("R.W. Beck"), has alleged in its pending Complaint in the above-referenced action that one of E3's Independent Engineer's Reports (*i.e.*, the "Windsor Report," as referenced below) infringes R.W. Beck's copyrighted works. I submit this Declaration in support of E3's Motion to Dismiss filed contemporaneously herewith in response to the allegations set forth in R.W. Beck's Complaint.

5. E3 is a consulting firm, which provides expert business, technical and environmental advice to lenders, owners and developers of energy projects worldwide. E3 employs a team of consultants with backgrounds in engineering, the environment, science and finance that provide objective oversight, critical analysis and solutions for businesses building, optimizing or restructuring energy projects. R.W. Beck is a direct competitor of E3 and as such, competes for the same projects.

6. As part of its consulting services to lenders, E3 conducts technical due diligence (*e.g.*, analyzing the associated technical, environmental, regulatory and commercial aspects) for a particular project to be financed. In general, E3 memorializes the results of its findings in the form of an Independent Engineer's Report for a particular project, which may be issued in connection with a commercial bank loan or the offering of securities to institutional investors to finance the project. Regardless of the project, boilerplate language is often included in these reports that qualifies the findings. Generally speaking, the bulk of E3's commissioned work in this context centers on conducting the technical due diligence on a particular project as opposed to the preparation of the ultimate report that merely memorializes its specific findings.

7. In the past, E3 has issued Independent Engineer's Reports in connection with so-called Rule 144A offerings. It is my general understanding that Rule 144A of the U.S. Securities

Act of 1933 facilitates a private placement offering of certain unregistered securities to "qualified institutional buyers," as defined by Rule 144A. Such "qualified institutional buyers" are not individual members of the general public, but rather are sophisticated institutional investors (*e.g.*, MetLife, Franklin Templeton Institutional, etc.), such as pension or mutual funds with $100M under management or broker-dealers with at least $10M portfolios.

8.  In December of 2005, E3 was engaged by a lender, Calyon Corporate and Investment Bank (formerly Credit Lyonnais) (hereinafter, "Calyon"), to provide certain technical due diligence in connection with financing sought for two coal-fired cogeneration plants owned by Windsor Financing, LLC, a special-purpose limited liability company organized to facilitate the private offering of bonds and owned by Cogentrix Energy ("Cogentrix"), a subsidiary of the Goldman Sachs Group, Inc. ("Goldman Sachs"). As part of its consulting services for this project, E3 completed an independent engineering review of both plants; worked closely with Cogentrix and the lender to evaluate the condition of the plants; reviewed the associated project contracts, operations and maintenance practices, expected capital improvements, environmental compliance and environmental conditions of the plant sites; and provided an independent review of the project's expected financial operating results. In February of 2006, E3 issued an Independent Engineer's Report ("Windsor Report") to the lender, which reported these findings and, upon information and belief, became an appendix to a Rule 144A Offering Circular to "qualified institutional buyers." Attached hereto as Exhibit A is a true and correct copy of E3's Windsor Report.

9.  The Windsor Report was requested by the lender, Calyon, and paid for by the borrower as part of the due diligence process related to the financing for the above-referenced

project. It is my understanding that the Windsor Report was not used and/or distributed as part of a public offering to individual investors, but rather was provided to Goldman Sachs to be included as part of a private offering of unregistered bonds to qualified institutional investors. E3 was not engaged by nor did it receive any funds from these investors for preparing the Windsor Report.

10.     E3 does not issue Independent Engineer's Reports to individual members of the consumer public. Rather, after conducting the requested due diligence, E3 provides such reports (*e.g.*, the Windsor Report) to investment banks and/or commercial lenders. Moreover, due to the nature of its business, E3's services are not offered to the general consuming public.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on August 22, 2007.

s/ Donald J. Hurd<br>
Donald J. Hurd