IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:07-cv-01378-RPM-BNB

R.W. BECK, INC.,
a Washington corporation,

       Plaintiff,

v.

E3 CONSULTING, LLC,
a Colorado limited liability company,

       Defendant.

---

## E3 CONSULTING, LLC'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS ALL CLAIMS OF R.W. BECK'S COMPLAINT

---

Defendant E3 Consulting, LLC ("E3") hereby replies in further support of its Motion to Dismiss all Claims of R.W. Beck's Complaint [8/22/07 Doc. No. 8] ("Motion"), and in opposition to R.W. Beck, Inc.'s ("R.W. Beck") Opposition to E3 Consulting's Motion for Summary Judgment [11/29/07 Doc. No. 15] ("Opp."). For the following reasons, as well as those set forth in E3's Motion and incorporated Memorandum of Law, E3 is entitled to immediate dismissal of R.W. Beck's copyright infringement and Colorado Consumer Protection Act ("CCPA") claims under Fed. R. Civ. P. 56, and unfair competition and unjust enrichment claims under Fed. R. Civ. P. 12(b).

**I.   E3 IS ENTITLED TO SUMMARY JUDGMENT AS TO R.W. BECK'S COPYRIGHT INFRINGEMENT AND CCPA CLAIMS**

    A.    R.W. Beck's Reports Have Not Been Infringed

Contrary to R.W. Beck's assertions, E3 is entitled to immediate summary judgment with regard to R.W. Beck's copyright infringement claim. R.W. Beck does not dispute that the

abstraction-filtration-comparison test is the proper analysis to determine whether there is a "substantial similarity" between the accused work and the copyrighted work for purposes of determining infringement. (Opp., p. 9.) Rather, R.W. Beck argues that E3 has engaged in a "faulty application" of this test by relying on the Black & Veatch Report for abstraction and filtration purposes. (Id.) R.W. Beck further adds that its "SES Claremont, Chicopee, Alexandria and Delaware Reports, along with R.W. Beck's 1982 Manual and R.W. Beck's SOP are the original source for much of the copyrighted language contained in R.W. Beck's Orange and Sacramento Reports." (Opp., p. 4, ¶ 12.) What R.W. Beck fails to recognize, however, is that either scenario generates the same result – no copyright infringement.

### 1.   The Orange and Sacramento Reports are "Derivative Works" and Must Be Filtered of All Unoriginal Content

By now arguing that the text at issue in the Black & Veatch Report (which predates the Orange and Sacramento Reports) allegedly comes from other sources, R.W. Beck has tacitly conceded that such text is unoriginal to the Orange and Sacramento Reports and hence, these Reports are derivative works.[1] R.W. Beck's alleged copyrights in the Orange and Sacramento Reports do not extend to the portions copied from preexisting materials:

> The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material.

---

[1] Section 101 of the Copyright Act defines a derivative work as "a work based upon one or more preexisting works. . . ." Clean Flicks of Colo., LLC v. Soderbergh, 433 F. Supp. 2d 1236, 1240-1241 (D. Colo. 2006) (citing 17 U.S.C. § 101).

17 U.S.C. § 103(b).[2]  Accordingly, even assuming that the relevant portions of the Black & Veatch Report are found in, or can be traced to, earlier R.W. Beck Reports, such text is still not original to the Orange and Sacramento Reports and must be filtered out for purposes of analyzing any copyright infringement of the Orange or Sacramento Reports.[3]  There is simply no substantial similarity between the Windsor Report and any remaining text in the Orange and Sacramento Reports after the abstraction-filtration-comparison test is applied.[4]

### 2. The Remaining Text At Issue is *De Minimis* and/or Functional

E3's Motion sets forth how any arguably similar text remaining in the Windsor Report is merely *de minimis*. (Motion, pp. 8-10.)[5]  Contrary to R.W. Beck's assertions, the remaining similar

---

[2]Section 106(2), 17 U.S.C., gives the owner of a copyright the exclusive right to prepare derivative works based upon the copyrighted work, but 17 U.S.C. § 103(b) makes clear that the copyrights in the derivative work do not extend to the preexisting materials contained within that derivative work.

[3]Although R.W. Beck points to these earlier works as the "source" of the relevant text of the Black & Veatch Report, it has failed to provide any evidence demonstrating that this earlier material was not in the public domain.  Any material predating February 28, 1989, lacking a copyright notice, and not registered with the Copyright Office within five years of its publication is deemed to be dedicated to the public.  See Nimmer, M.B., 2 Nimmer on Copyright, § 7.13[B], p. 7-119; 17 U.S.C. § 405(a)(2).  R.W. Beck's conclusory allegations are simply insufficient to oppose summary judgment on this issue.  Dart Indus., Inc. v. Plunkett Co. of Okla., Inc., 704 F.2d 496, 498 (10th Cir. 1983).

[4]For the sake of brevity, E3 has not restated its rationale for why there is no substantial similarity and/or why the remaining language is functional.  Such analysis has been fully briefed in its Motion.  (See Motion, pp. 8-10.)

[5]Contrary to R.W. Beck's assertions, it is not improper for this Court to decide this issue under Rule 56.  See, e.g., Feder v. Videotrip Corp., 697 F. Supp. 1165, 1176 (D. Colo. 1988) (recognizing that courts have applied a *de minimis* standard when applying the "substantial similarity" test).

text is sufficiently trivial and the law does not impose legal consequences to the extent that any copying of this trivial amount of text has occurred. See, e.g., Davis v. The Gap, Inc., 246 F.3d 152, 172 (2d Cir. 2001) (trivial copying of non-essential matters is not copyright infringement).

### 3. The Format of R.W. Beck's Reports is Not Protectable

R.W. Beck also argues that the format of its Orange and Sacramento Reports is protectable and has been infringed. To support this apparently new theory,[6] R.W. Beck takes nonsensical positions, such as "nothing requires the conclusions to be only cited at the end of the Report, rather than at the beginning. . . ." and "nothing requires the assumptions and considerations to immediately precede the conclusions. . . ." (Opp., pp. 16-17.) There are, however, only a limited number of formats for conveying this information to clients and hence, the format-at-issue is not protectable. Morrissey v. Proctor & Gamble Co., 379 F.2d 675, 678-79 (1st Cir. 1967) (public should not be precluded by copyrighted information that has limited number of formats). Merely pointing to earlier works without offering any evidence as to an enforceable copyright in the format of any of these works does not meet R.W. Beck's burden. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (colorable arguments are not enough to survive summary judgment). A copyright infringement claim based on the format of the Orange and/or Sacramento Reports must fail.

---

[6] R.W. Beck's Complaint does not state that the format of any of its Reports is at issue. Rather, it references the text, i.e., the findings, conclusions and recommendations of its Reports, in support of its copyright infringement claim. (Complaint [6/29/07 Doc. No. 1], ¶¶ 8, 9.)

## B.     R.W. Beck Has Not Shown A Significant Impact On The Public

In responding to E3's Motion under Rule 56, R.W. Beck must do more than make conclusory allegations – it "must set forth specific facts showing that there is a genuine issue for trial." Dart Indus., Inc., 704 F.2d at 498 (citing Fed. R. Civ. P. 56(e)).  In contrast, E3's initial burden under Rule 56 is slight.  Russell v. Turnbaugh, No. 90-272, 1991 U.S. Dist. LEXIS 11573, at *4-5 (D. Colo. Feb. 7, 1991).  Rule 56 does not require E3 to negate R.W. Beck's claim.  Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  Rather, E3 must simply allege an absence of evidence to support R.W. Beck's claim and identify supporting portions in the record.  Id.  Since E3 has made this initial showing, the burden of proof shifts to R.W. Beck.  Id. (citing Anderson v. Dept. of Health and Human Servs., 907 F.2d 936, 947 (10th Cir. 1990)).  R.W. Beck must go beyond the pleadings and identify specific facts showing that there is a genuine issue for trial on every element challenged by E3's Motion.  Id. (citing Willner v. Budig, 848 F.2d 1032, 1033-34 (10th Cir. 1988), cert. denied, 488 U.S. 1031 (1989)).  Summary judgment should be granted if the pretrial evidence is merely colorable or is not significantly probative.  Liberty Lobby, 477 U.S. at 249-50; Russell, 1991 U.S. Dist. LEXIS 11573, at *4-5.

R.W. Beck alleges that it has raised genuine issues of material fact with respect to its CCPA claim.  (Opp., p. 23.)[7]  This is simply untrue.  R.W. Beck was required to have a reasonable basis for asserting its CCPA claim against E3.  Conclusory allegations, however, cannot carry the day. Dart Indus., Inc., 704 F.2d at 498.  Despite having multiple opportunities to do so, R.W. Beck has

---

[7]Contrary to R.W. Beck's assertions (Opp., pp. 23-26), E3 has never conceded the other elements of R.W. Beck's CCPA claim that are not addressed by E3's Motion.  Rather, E3 has simply moved to dismiss this claim based on one particular element at this time.

failed to provide any evidence that E3's dissemination of its Windsor Report had a "significant impact on the general public" as required for a CCPA claim. Rhino Linings U.S.A., Inc. v. Rocky Mountain Rhino Lining, Inc., 62 P.3d 142, 146-47 (Colo. 2003).[8]  R.W. Beck's initial response was that "it is easy to imagine facts that would undermine E3 Consulting's argument." (Plaintiff's Motion Pursuant to Rule 56(f) ("Rule 56(f) Motion") [9/11/07 Doc. 10], pp. 5-6.)  More recently, R.W. Beck asserts that it is "aware of multiple instances in which E3 distributed its reports to customers" and yet, fails to identify any particular customer or even the type of customer.[9] (Opp., p. 26.)  R.W. Beck does, however, acknowledge the types of entities that typically receive its Reports: "corporations, partnerships, certain governmental and private registered dealers, registered investment companies, insurance companies, banks, savings and loan associations, and others." (Opp., pp. 25-26.)[10]  These are not examples of the general public, but rather are "sophisticated entities" to which a CCPA claim does not apply. Rhino, 62 P. 3d at 150 (sophisticated buyer not

---

[8] There is no case law supporting R.W. Beck's theory that a "subset" of the general public factors into a CCPA claim. Rather, the proper analysis is to determine whether there were a significant number of consumers affected by the deceptive practice. See, e.g., Ramirez v. eWork, Inc., No. 06-00686, 2007 U.S. Dist. LEXIS 68893, at *12-13 (D. Colo. Sept. 18, 2007) (finding significant public impact based on a class of 2000-2500 affected consumers); Rhino, 62 P.3d at 150 (applying the same standard and finding no significant public impact based on three affected dealers with private rights of action); Netquote, Inc. v. Byrd, 504 F. Supp. 2d 1126, 1136 (D. Colo. 2007) (effect on "some" and "smaller pool" of insurance buying public insufficient to show a significant public impact). As R.W. Beck knows, this is simply not the case in the instant lawsuit.

[9] This is the second time that R.W. Beck has attempted to benefit from reference to an alleged recipient of the Windsor Report without revealing the identity of the recipient. (See Plaintiff's Reply In Support of Its Rule 56(f) Motion ("Reply") [10/16/07 Doc. No. 12], p. 4.)

[10] R.W. Beck knows that the Reports-at-issue are typically provided to highly sophisticated clients, underwriters and financial advisors. (See, e.g., Opp., pp. 25-26, Ex. 10 (listing R.W. Beck's former clients and advisors that received its Reports, such as City of Conway, Salomon Brothers, Inc., etc.).)

protected by CCPA); Crowe v. Tull, 126 P. 3d 196, 208-09 (Colo. 2006) (examining level of sophistication). The dissemination of the Windsor Report as part of a private securities offering is simply not akin to advertising over the Internet to the general public, as R.W. Beck suggests by citing to such cases as Ramirez v. eWork. (Opp., p. 24.)

Five months have passed since the filing of its Complaint and R.W. Beck, despite having numerous opportunities, has still not presented any evidence demonstrating that the Windsor Report "significantly impacted the public as actual or potential consumers" of E3's services as required by the CCPA. Rhino, 62 P.3d at 146-47. Accordingly, E3 is entitled to summary judgment with regard to R.W. Beck's CCPA claim.

## II.  R.W. BECK'S UNFAIR COMPETITION AND UNJUST ENRICHMENT CLAIMS ARE PREEMPTED BY FEDERAL COPYRIGHT LAW

R.W. Beck's unfair competition and unjust enrichment claims should be dismissed under Rule 12(b).[11] In short, these claims are preempted by federal copyright law. R.W. Beck admitted this point when it stated in its Rule 56(f) Motion that the underlying factual basis for these claims was "not only that E3 copied R.W. Beck's Reports, *but also* that E3 Consulting's employees took those Reports with them when they left R.W. Beck." (Rule 56(f) Motion, p. 4, ¶ 12 (emphasis in original).) Since then, R.W. Beck has tried to morph its position as to the factual bases for these claims. For example, in its Reply to its Rule 56(f) Motion, R.W. Beck alleged that the basis for its

---

[11]E3 has moved to dismiss R.W. Beck's unfair competition and unjust enrichment claims under Fed. R. Civ. P. 12(b). With regard to this portion of E3's Motion, E3 did not refer to any matters outside the pleadings and does not believe that there is a need to do so in order to resolve this issue. As such, it would be improper to treat this portion of the Motion under Rule 56 and R.W. Beck should be precluded from going outside of the pleadings in defending against this portion of the Motion. Fed. R. Civ. P. 12(b).

unfair competition claim was that "E3 Consulting knowingly made false representations about the source of its reports to potential customers . . ." and its unjust enrichment claim stemmed from "any profits obtained from those acts. . . ." (Reply, p. 5.) R.W. Beck now asserts that the factual basis for both claims is "E3's unauthorized use of R.W. Beck's 'methodologies, methods, and language' in creating its reports." (Opp., p. 17.) R.W. Beck's Complaint does not support either position. R.W. Beck never alleges in its Complaint that E3 used any of R.W. Beck's "methodologies, methods and language" apart from the context of alleged copyright infringement.[12] Rather, R.W. Beck asserts that certain "methodologies, methods and language" were incorporated into its Reports, and that E3 took these Reports and "made unauthorized copies of some or all of R.W. Beck's Reports." (Complaint, ¶¶ 8, 15.) R.W. Beck's latest position simply ignores the language of its Complaint. As pled, R.W. Beck's unjust enrichment and unfair competition claims are nothing but restatements of its copyright infringement claim and must be dismissed.

### III.  CONCLUSION

All of R.W. Beck's claims should be dismissed. R.W. Beck has not met its burden with regard to its copyright infringement and CCPA claims to survive summary judgment. Further, its new bases supporting its unfair competition and unjust enrichment claims cannot save those claims as pled. As such, these claims must be dismissed under Rule 12(b) because they are preempted under federal copyright law. Accordingly, E3's Motion should be granted in its entirety.

---

[12] R.W. Beck's position is not only inconsistent, but makes no sense. In further support of its position, R.W. Beck claims that "language (as opposed to its written expression embodied in the Copyrighted Works) [is] not copyrightable subject matter." (Opp., p. 20.) What additional "language" R.W. Beck is referring to is quite unclear, and is certainly not spelled out anywhere in its Complaint.

Respectfully submitted,

Dated: December 14, 2007        By:   s/ Benjamin B. Lieb
        ***Benjamin B. Lieb***
        SHERIDAN ROSS P.C.
        1560 Broadway, Suite 1200
        Denver, Colorado  80202-5141
        Telephone:     303-863-9700
        Facsimile:      303-863-0223
        E-mail: blieb@sheridanross.com
            litigation@sheridanross.com

ATTORNEYS FOR DEFENDANT
E3 CONSULTING, LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 14, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and I hereby certify that I have mailed or served the document or paper to the following non-CM/ECF participants in the manner (mail, hand delivery, etc.) indicated by the non-participant's name:

Natalie Hanlon-Leh, Esq.
Mary V. Sooter, Esq.
Faegre & Benson
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado  80203-4532
Telephone:     303-607-3500
E-mail:           nhanlon-leh@faegre.com
                      msooter@faegre.com

s/ Lori R. Brown
Lori R. Brown
Assistant to Benjamin B. Lieb
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, Colorado  80202-5141
Telephone:     303-863-9700
Facsimile:       303-863-0223
E-mail:           lbrown@sheridanross.com
                      litigation@sheridanross.com